[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 10607
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Mary Grace Tamboles, were married on November 1, 1980 in Danbury, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage and the defendant does not presently have any minor children. Neither party has received state assistance.
From the evidence presented, the court finds that the plaintiff is at fault for the breakdown of the marriage.
The plaintiff was born on June 2, 1945.
The plaintiff has heart problems including cardiac myopia which is an enlargement of the heart. He was originally diagnosed with that condition in July of 1999. He has resultant breathing difficulty. He takes two separate medications for that problem. The medications stabilize his heart beat.
The plaintiff has gross weekly income of $575 and net weekly of $394.76 from his occupation as a builder. He also receives $93 weekly rent from the defendant's daughter and son-in-law for the in-law apartment that they occupy at the family residence. That income will stop once the home is sold. He has present liabilities consisting of MasterCard with a balance of $3500; Ms. Lanzara with a balance of $12,000; Town of Bethel real estate taxes with a balance of $4200; and Elizabeth A. Edwards with a balance of $8051.83. Approximately $2000 of the $3500 MasterCard debt was incurred for paying real estate taxes for the Bethel property. He owns a condominium located at 14-6 South Street, Danbury, Connecticut, with a fair market value of $100,000 and a mortgage balance of $52,500 with equity of $47,500. The first mortgage has a total balance of approximately $105,000, and is secured by both the plaintiff's condominium and the defendant's condominium. The parties entered into the following CT Page 10608 stipulation dated July 12, 2000 regarding the condominiums:
 There is currently one joint mortgage on the two condominium units. Each party shall be solely responsible for their respective unit and the costs and expenses associated therewith, including one-half the mortgage, the individual taxes, insurance, utilities, condominium fees, common charges, assessments, repairs, maintenance, etc. Each party shall be free to rent, sell, hypothecate or otherwise transfer their interest in their respective unit. If either party sells a unit he/she shall pay off one-half the mortgage obligation and the remaining owner shall indemnify and hold the other harmless as to the balance of the mortgage debt. Each party shall cooperate with the other and the mortgagee in the event of a sale of a unit.
The plaintiff owns a 1987 Ford pickup truck with a fair market value of $500 and a 1986 Oldsmobile with a fair market value of $500. His miscellaneous tools have a value of approximately $15,000, one-half of which is owned by his son and the other half is owned by himself. He has a balance in his People's bank account of $2500. He has one life insurance policy through American Express in which he is the named insured in the face amount of $100,000, and a second life insurance policy through American Express in which the defendant is the named insured in the face amount of $100,000. Neither life insurance policy have any cash surrender value.
The plaintiff is a veteran and has V.A. health benefits available at no cost to him.
Although no shown on his financial affidavit, the plaintiff also owns a 14 foot rowboat. He also owns few pistols.
The plaintiff owned an insurance business when the parties married. He started that business in 1976. The business was sold in 1988 for approximately $440,000 cash, plus free health insurance for five years. The plaintiff netted approximately $300,000 from the sale of the business after payment of taxes. That health insurance ended in 1993. The approximate value of that health insurance over the five year period was approximately $50,000. Most of the money from the proceeds of the sale of his business was used for the parties to live on. He is presently paying for health insurance for himself and the defendant at a cost of $496 monthly. CT Page 10609
At the present time, the defendant is on medicare. There is available an AARP health care plan with a monthly premium of $113.75 based on Plan C. That plan does not cover prescriptions. The defendant is eligible for coverage under that plan. There is prescription health insurance available for the defendant under ConnPACE. ConnPACE helps senior and disabled persons pay for certain prescription drugs, insulin, insulin syringes and needles. Participants pay $12 for each prescription drug and ConnPACE pays the rest.
The defendant was born on June 16, 1938.
The defendant has had kidney problems since 1988 or 1989. She was on dialysis three times a week from the late 1980s until she had a kidney transplant in December, 1994. Commencing January, 1995, she was diagnosed with psychosis. She was hospitalized in Hartford approximately six times, and was also hospitalized in Danbury for her psychosis during most of 1995. The parties separated when the plaintiff vacated the marital residence in the spring of 1995.
On May 22, 2000, a pendente lite order was entered coded 121 as follows:
 That the Plaintiff is ordered to continue the existing health insurance policy costing $207/week unless the attorneys can stipulate to an alternative.
 That the Plaintiff is to pay $142/week in alimony to the Defendant. The court reserves the right to revisit this alimony order should the parties and their attorneys stipulate to a less expensive health insurance policy.
 That each party is to pay their own health insurance deductible and unreimbursed medical expenses.
The defendant presently receives social security disability in the amount of $178 per week. She will be eligible to receive regular social security on June 16, 2003 when she reaches age sixty-five. She was previously married for over ten years. Her first husband is sixty-four years old and is still working. She will be eligible to collect social security either based on her own earnings or as the spouse of a person who collects social security payments. She has weekly expenses totaling $1265 that include the weekly mortgage payment of approximately $358 on the family home that she does not pay, and real estate taxes on the family home of $158 weekly that she does not pay. The utility cost for the family home are approximately $105 weekly. It is clear that the parties cannot afford to continue to own the family home. The social CT Page 10610 security disability income that the defendant receives is for her psychosis. She originally was covered under medicare for her kidney problems.
The defendant owns a condominium at 14-5 South Street, Bethel, Connecticut. It has a fair market value of $100,000 and a mortgage balance of approximately $52,500 and an equity of approximately $47,500. The condominium that she owns on South Street, Bethel, Connecticut, is different than the one the plaintiff owns. She also owns property at 49 Wright Street, Stamford, Connecticut, with a fair market value of $21,250 and no mortgage. She owns a 1985 Chevrolet with no value. Her furnishings, jewelry and miscellaneous personal items have a fair market value of $16,000. She has an account at First Union Bank with a balance of $2600. She also has a First Union annuity with a value of $2800. She also is the holder of a promissory note in the original face amount of $13,000 with a remaining balance due to her of $8000.
She has a MasterCard liability with a balance of $2960, a VISA liability with a balance of $2900, and a Sears liability with a balance of $253, and a liability to her chiropractor with a balance of $3600, as well as a liability for attorney's fees of approximately $8500. In December, 1998, she had a balance of approximately $41,000 in savings. In April, 1999, that balance was approximately $8000. She used approximately $13,000 of her funds to make a loan to her daughter and cannot account for the remaining money. Her daughter presently pays her $400 monthly on the remaining loan balance of $8000. Her financial affidavit shows a total weekly income of $248.50. That is a typographical mistake as the correct amount is $284.50. In addition, she has the $400 monthly repayment from her daughter on the balance of the loan to her daughter.
The land for the family home was purchased from an abutting land owner in 1982. The plaintiff constructed the family home with the use of some subcontractors. The land cost was $50,000 with $5000 down and $250 per month until the balance of the land cost was paid off in full. There is a so-called in-law apartment as part of the family home that is presently occupied by the defendant's adult daughter and the daughter's husband. They are paying rent for the use of that apartment. A contract of sale for the land where the family residence is located at 123 Putnam Park Road, Bethel, Connecticut, was entered into October, 1982 between Robert A. Steck III as seller, and the plaintiff and defendant as buyer. That contract for sale provides in part as follows:
 The seller shall reserve the right of first refusal to repurchase the property in the event that the buyers shall offer same for sale, said right of first refusal to match the highest and best offer on the CT Page 10611 same terms as shall have been received by buyer provided that buyers shall first notify the seller by registered mail, return receipt requested of any such offer and the seller shall have ten (10) days in which to enter into a contract with the buyers to match the terms of said sale.
The seller, Robert A. Steck III, has executed the following offer/exercise of first refusal dated June 28, 2000:
 I have reviewed the appraisal provided to me by Robert H. Paugh and I am willing to offer $570,000 to purchase the property at 123 Putnam Park Road, Bethel, Connecticut, under the right of first refusal afforded me in the contract dated October, 1982. Closing to be within a ninety days period from the date of accepting this offer. I am willing to be flexible regarding occupancy date out of consideration for Mrs. Paugh.
In the event the home at 123 Putnam Park Road, Bethel, Connecticut, is sold to Robert A. Steck III, there would not be any real estate commission due as a result of the sale. Mr. Steck is ready, willing and able to complete the purchase at $570,000.
The parties are in dispute as to the present fair market value of the family home. From the evidence presented, the court finds that its fair market value is $570,000. The home was financed in part as a result of property owned by the defendant that was sold in 1985. The approximate $135,000 proceeds of the sale of the defendant's property went towards paying the bills for the family home at 123 Putnam Park Road, Bethel, Connecticut. The present balance on the first mortgage on the family home is approximately $184,213. The family home includes approximately 9-1/2 acres of land. The defendant seeks to have the court order that the property be subdivided so as to create an additional building lot for sale. The court finds that there has been no credible evidence presented that subdivision approval could be obtained.
The plaintiff vacated the family home in 1995. He has used most of his savings in order to keep substantially current on the family home mortgage and pay for other living expenses for the defendant and himself. As of June 30, 2000, the mortgage had an overdo payment of $1562.52.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81(c) CT Page 10612 regarding the issue of property orders, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the follows orders:
 ORDERS
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $100 per week.
2. Alimony is to terminate upon the death of the plaintiff or the defendant or the remarriage of the defendant.
3. The defendant is to cooperate in filling out the necessary applications to obtain prescription health insurance under ConnPACE and AARP health insurance Plan C. The plaintiff is to pay one-half of each prescription cost paid by the defendant. He is also to pay one-half of the $113.75 monthly premium for the AARP health insurance Plan C for the defendant.
4. The existing health insurance is to remain in place for the defendant until the ConnPACE coverage becomes effective and the AARP Plan C becomes effective. During the period of time that the existing coverage remains in place, each party is responsible for paying one-half of the premium for that coverage.
5. The provisions of § 46b-81(c) and § 46b-82 are applicable.
C. BY WAY OF PROPERTY ORDERS
1. The stipulation entered into between the parties regarding the two condominiums dated July 12, 2000 is approved of and orders are entered in accordance with that stipulation. Each party is awarded the condominium presently in the name of that party.
2. The court awards to the plaintiff two paintings by Robert Crawford and the Time-Life books that are at the family residence.
3. All of the defendant's interest in the proper at 49 Wright Street, Stamford, Connecticut, is assigned to the defendant. CT Page 10613
4. The 1985 Chevrolet shown on the defendant's financial affidavit is assigned to the defendant. The furnishings, jewelry, golf cart, shoes, miscellaneous personal items shown on the defendant's financial affidavit with a value of $16,000 is assigned to the defendant.
5. The First Union money market and Christmas Club account shown on the defendant's financial affidavit with a balance of $2600 is assigned to the defendant.
6. The First Union annuity shown on the defendant's financial affidavit with a balance of $2800 is assigned to the defendant.
7. The note receivable from the defendant's daughter with a balance of approximately $8000 is assigned to the defendant.
8. All liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff, and he is to hold the defendant harmless therefrom.
9. All liabilities shown on the defendant's financial affidavit including her liability to her chiropractor are to be paid by the defendant, and she is to the plaintiff harmless therefrom.
10. All life insurance policies in which the plaintiff is the named insured is assigned to the plaintiff.
11. All life insurance policies in which the defendant is the named insured are assigned to the defendant.
12. The 1987 Ford and the 1986 Oldsmobile shown on the plaintiff's financial affidavit are assigned to the plaintiff.
13. All miscellaneous work tools in the possession of the plaintiff are assigned to the plaintiff.
14. The People's bank account shown on the plaintiff's financial affidavit with a balance of $2500 is assigned to the plaintiff.
15. Although not shown on her financial affidavit, the defendant also owes her dentist approximately $280 which the court orders that she pay and hold the plaintiff harmless therefrom.
16. The plaintiff shall retain all of office furniture, furnishings and equipment located in the barn at 123 Putnam Park Road, and all equipment and machinery located in the barn. CT Page 10614
17. The court assigns to the plaintiff a trout painting by Walker Koda that is located at the family residence.
18. The court assigns to the plaintiff the porch furniture located at the family residence.
19. In the event the plaintiff's personal jewelry including a gold ring with opal stone, a man's silver medallion, a man's gold ring with a ruby stone, and a man's gold wedding band with diamonds are located, then all of those items are assigned to the plaintiff. All of the remaining household furniture and furnishings at the family residence are awarded to the defendant.
20. The marital home located at 123 Putnam Park Road, Bethel, Connecticut, is ordered sold to Charles Steck III for a selling price of $570,000 pursuant to his written offer to purchase dated June 28, 2000. The net proceeds from the sale after payment of the mortgage, taxes and closing costs are to be divided 60 percent to the defendant and 40 percent to the plaintiff. The sale is to include a provision by Mr. Steck allowing the defendant to remain in possession rent free until November 30, 2000. Any rental income received from the in-law apartment is to belong to Mr. Steck. Until the time the property is transferred to Mr. Steck, any rental income received from the in-law apartment is to belong to the plaintiff. The plaintiff is responsible for paying all of the utilities during the time she remains in possession.
21. The plaintiff's 14 foot rowboat and his pistols are all assigned to the plaintiff.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. The plaintiff is ordered to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns for so long as there is an outstanding alimony order or any arrearage thereto by certified mail return receipt or registered mail return receipt within fifteen days after such returns have been filed.
Axelrod, J. CT Page 10615